IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FRANCISCO JAVIER MONGE-NUNEZ,   )<br>)<br>Petitioner,   )<br>)<br>v.   )<br>)<br>ACTING DIRECTOR OF THE NEW   )<br>ORLEANS FIELD OFFICE OF ICES   )<br>ENFORCEMENT AND REMOVAL   )<br>OPERATIONS DIVISION, Scott Ladwig,   )<br>)<br>Defendant.   ) | No. 2:25-cv-03043-TLP-atc |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Francisco Javier Monge Nuñez, an alien detained in the West Tennessee Detention Facility in Mason, Tennessee, petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) On November 14, 2025, the Court entered an Order directing Respondent to show cause why the Writ should not be granted and advising that the Court would set a hearing on the Petition in a separate order. (ECF No. 8.) Respondent responded to the Show Cause Order (ECF No. 11), and Petitioner replied. (ECF No. 17.) The Court held a hearing on the Petition on November 25, 2025. (ECF No. 18)  After hearing both Petitioner and Respondent's arguments, the Court took the matter under advisement. (*Id.*)

For the reasons stated below, the Petition is **GRANTED**.

**BACKGROUND**

Petitioner, a Mexican citizen, has been living in the United States since 2001 without lawful status. (ECF No. 11 at PageID 46; ECF No. 1 at PageID 15.) He has a wife, five children

who are U.S. citizens, and no criminal record. (ECF No. 1 at PageID 14–15.) He has resided in Shelby County, Tennessee, for all of his time in the United States. (ECF No. 1 at PageID 14.) Petitioner was not apprehended by immigration officials when he entered the country in 2001 or any time since, and he has never faced deportation or removal proceedings. (*Id.*) While there is some uncertainty about the facts of his arrest here, law enforcement stopped Petitioner while he was driving on Macon Road in Memphis, Tennessee, after work. (*Id.*)

Federal law enforcement arrested him and placed him in the custody of U.S. Immigration and Customs Enforcement ("ICE"). (*Id.*) On October 29, 2025, the U.S. Department of Homeland Security ("DHS") provided Petitioner with a Notice to Appear, which alleges that he entered the country without a valid entry document and that he is an immigrant without "a valid unexpired passport, or other suitable travel document, or document of identity and nationality" in violation of 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). (ECF No. 11-1 at PageID 67–70.) He remains in ICE custody at the West Tennessee Detention Facility in Mason, Tennessee. (ECF No. 11 at PageID 46–47.)

DHS and the Executive Office of Immigration Review ("EOIR") have not held a bond hearing for Petitioner. (ECF No. 1 at PageID 2–3.) They determined that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), a change from a decades-long practice of affording noncitizens in Petitioner's position with bond hearings. (*Id.*) The change came in July 2025, when DHS, the Department of Justice ("DOJ"), and ICE issued a new policy.[1] The new policy subjects noncitizens who have resided in the United States for a long time and who are

---

[1] American Immigration Lawyers Association, *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-forapplications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.") (last visited Dec. 8, 2025).

2

apprehended in the interior of the country to mandatory detention, where before, they would be afforded bond hearings under 8 U.S.C. § 1226(a).  Before this change in policy, noncitizens who resided in the United States for a long time and who were not apprehended at the border were not considered "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A).  (ECF No. 1 at PageID 1–2, 14–15); *Godinez-Lopez v. Ladwig et al.*, No. 2:25-cv-02962, at *3 (W.D. Tenn. Oct. 31, 2025).  They were instead detained under § 1226(a) and entitled to a bond hearing.  (ECF No. 1 at PageID 1–2, 14–15); *Godinez-Lopez v. Ladwig et al.*, No. 2:25-cv-02962, at *3 (W.D. Tenn. Oct. 31, 2025).  The Board of Immigration Appeals ("BIA") later upheld this new policy in the case of *In re Matter of Yajure Hurtado*.  29 I. & N. Dec. 216 (BIA 2025).  And so immigration judges are now bound by precedent which denies noncitizens bond hearings under § 1225(b)(2)(A), even though those same noncitizens would have been eligible for a bond hearing under § 1226(a).

Petitioner, who has resided in the United States for over two decades with no criminal history and five children who are U.S. citizens now "faces the prospect of months, or even years, in immigration custody, separated from his family and community."  (ECF No. 1 at PageID 15.)  Petitioner asserts that the failure to provide him with a bond hearing violates 8 U.S.C. § 1226(a) and his Fifth Amendment right to procedural due process.  He asks for the Court to grant his Petition and order a bond hearing, his release from custody pending that bond hearing, and attorney's fees and costs under the Equal Access to Justice Act.  (*Id.* at PageID 17; ECF No. 17 at PageID 110.)

**LEGAL STANDARD**

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).

Two sections of the Immigration and Nationality Act of 1952 ("INA") primarily govern the detention of noncitizens during removal proceedings. *See* 8 U.S.C. §§ 1225, 1226. The Supreme Court has already distinguished these two provisions in *Jenings v. Rodriguez*. *See* 583 U.S. 281, 289 (2018). The *Jennings* Court determined that the government may "detain certain aliens seeking admission into the country" under § 1225(b) while § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* (emphasis added). Relevant here, § 1225(b)(2)(A) governs mandatory detention of applicants for admission after an immigration officer has determined that they will not be entitled to admission.

> (b)  Inspection of applicants for admission
> . . .
> (2)  Inspection of other aliens
> (A)  In general
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "[A]dmission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1226(a) provides for discretionary detention. 8 U.S.C. § 1226(a).

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
>     (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
>     . . .

8 U.S.C. § 1226(a). Known as the Laken Riley Act, subsection (c) of § 1226, provides for mandatory detention of noncitizens found inadmissible or deportable under certain provisions and who have been "charged with," "arrested for," "convicted of," or admit "having committed" certain listed crimes. 8 U.S.C. § 1226(c). "[N]oncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an Immigration Judge." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). "The IJ evaluates whether there is a risk of nonappearance or danger to the community." *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

## ANALYSIS

Petitioner makes four arguments based on the statutory construction of §§ 1225 and 1226 in support of his challenge to his detention without a bond hearing. (ECF No. 1 at PageID 11–14.) First, he argues that Respondent's reading of the statutory framework conflicts with the title of § 1225, "Inspection by Immigration Officers; Expedited Removal of Inadmissible Arriving Aliens; Referral for Hearing." (*Id.* at PageID 11 (citing 8 U.S.C. § 1225).) Next, he asserts that Respondent's interpretation ignores the subject-matter of § 1225, which addresses the processing of immigrants actively crossing the border. (*Id.* (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018); 8 U.S.C. § 1225(b)(2)(A)).) Third, Petitioner argues that Respondent's reading of § 1225(b)(2)(A) ignores several of the words within the subsection. (*Id.* at PageID 12.) Finally,

he argues that the Respondent's interpretation of § 1225(b)(2)(A) renders § 1226(c) superfluous. (*Id.* at PageID 13.)

Petitioner also asserts a procedural due process argument. (*Id.* at PageID 16–17.) His argument is that the failure of Respondent to provide him with a bond hearing deprives him of his liberty without sufficient process under the balancing test in *Matthews v. Eldridge*. (*Id.* (citing *Matthews v. Eldrige*, 424 U.S. 319 (1979)).) He lastly argues that the Court should not order him to exhaust his administrative remedies because doing so would be futile, the BIA cannot review constitutional challenges, and "the 'legal question' at issue 'is fit for resolution and delay means hardship.'" (ECF No. 17 at PageID 101–04.)

Respondent counters that the Court should require Petitioner to exhaust administrative remedies before seeking relief from the federal judiciary. Respondent claims that the Sixth Circuit typically requires exhaustion and it furthers judicial economy and efficiency by limiting the number of habeas petitions in federal court. (ECF No. 11 at PageID 48–50.)

Respondent next provides three arguments supporting its interpretation of the INA: "(1) § 1225's text controls; (2) other districts have adopted the Respondent's position; and (3) § 1225 is not ambiguous." (*Id.* at PageID 50.) The thrust of Respondent's interpretation tracks the BIA's recent opinion in *In re Matter of Yajure Hurtado*. Respondent asserts that, because an "applicant for admission" is any unadmitted noncitizen in the United States, Petitioner is an applicant for admission, who is necessarily seeking admission, and therefore properly detained under § 1225(b)(2)(A) pending further removal proceedings under § 1229a. (*Id.* at PageID 50–60.)

According to Respondent, the INA recognizes only two classes of unadmitted noncitizens that are not seeking admission: (1) "someone who withdraws his application for admission and

6

'depart[s] immediately from the United States'" and (2) "someone who agrees to voluntarily depart 'in lieu of being subject to proceedings under § 1229a . . . or prior to the completion of such proceedings.'." (*Id.* at PageID 52.) And this reading of § 1225 aligns with the policy goal of avoiding rewarding noncitizens that evade examination upon entry into the country. (*See id.* at PageID 57.)

Respondent also argues that detaining Petitioner under § 1225 does not violate procedural due process. (*Id.* at PageID 60.) Respondent claims that Petitioner is properly detained under § 1225 and that mandatory detention under § 1225 does not violate due process because courts have held that detention during removal proceedings does not to violate due process. (*Id.* at 60–63.)

The parties cite many recent cases addressing the very issue before this Court. Having reviewed many of these cases, this Court is persuaded by the reasoning in *Godinez-Lopez v. Ladwig et al.* and *Maldonado Bautista et al. v. Santacruz Jr. et al. See* No. 2:25- CV-02962, (W.D. Tenn. Oct. 31, 2025); No. 5:25-cv-01873, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025).[2] For the reasons stated below, the Court finds that § 1226(a) is the appropriate statute under which Petitioner should be considered detained and that he is entitled to a bond hearing. The Petition therefore is **GRANTED**.

---

[2] "By recent count, the central issue in this case . . . has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States." *Barco Mercado v. Francis*, 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (describing the results in cases addressing the same issue as here).

I.      **Administrative Exhaustion**

The Parties agree that administrative exhaustion is not statutorily required here but disagree on whether the Court should apply the doctrine of prudential exhaustion.  (*Compare* ECF No. 11 at PageID 48–50, *with* ECF No. 17 at PageID 101–04.)  The Court agrees that Congress has not explicitly mandated exhaustion in this context.  Where Congress has not explicitly spoken, requiring the exhaustion of administrative remedies lies within "sound judicial discretion."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  In exercising that discretion, the Supreme Court has stated that "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion."  *Id.* at 146.  Those institutional interests are "protecting administrative agency authority and promoting judicial efficiency."  *Id.* at 145.

The *McCarthy* Court also identified several situations in which the interest of the individual weighs heavily against the institutional interests.  *See id.* at 146–49.  Relevant here, "an administrative remedy may be inadequate where the administrative body . . . has otherwise predetermined the issue before it."  *Id.* at 148 (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n. 14 (1973); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act"); *Association of National Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1156–1157 (1979) (bias of Federal Trade Commission chairman), *cert. denied*, 447 U.S. 921 (1980); *Patsy v. Florida International Universit*y, 634 F.2d 900, 912–913 (5th Cir. 1981) (en banc) (administrative procedures must "not be used to harass or otherwise discourage those with legitimate claims"), *rev'd on other grounds*, *sub nom. Patsy v. Board of Regents of*

*Florida*, 457 U.S. 496 (1982)); *See also Herr v. U.S. Forest Serv.*, 803 F.3d 822–23 (6th Cir. 2015) ("If administrative review would come to naught, if any efforts before the agency would be pointless, the courts do not insist that litigants go through the motions of exhausting the claim anyway.") (internal quotations omitted).

The Court agrees with Petitioner that the BIA's decision in *Matter of Yajure Hurtado*, which is binding on immigration judges, makes exhausting administrative remedies futile here. To exhaust his remedies here, Petitioner would appeal to the same BIA. So the decision on whether to provide Petitioner with a bond hearing has been predetermined. Further, the BIA cannot review constitutional challenges, and therefore, Petitioner can only have his due process claim reviewed in federal court. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Requiring exhaustion, in this case, would not further the ends of judicial efficiency and protecting administrative authority because it would simply delay the resolution of Petitioner's legal questions. Petitioner's individual interest in having prompt access to this forum outweighs any institutional interests at stake. The Court therefore declines to require Petitioner to exhaust administrative remedies and next considers the merits of Petitioner's legal questions.

**II.     Statutory Interpretation**

    **a.  Interpretation of the Plain Text**

Courts should construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Each word within the statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010,

(2017); *Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 356 (2013)). And courts "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). And "[b]arring unusual cases, '[s]tatutory definitions control the meaning of statutory words.'" *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3289861, at *8 (C.D. Cal. Nov. 20, 2025) (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949)).

The Parties disagree over whether § 1225(b)(2)(A) or § 1226(a) should govern Petitioner's detention. For starters, as the *Maldonado Bautista* court reasoned, the plain text of the statutory definition of "applicants for admission" does not support its application to Petitioner. *See id.* at *8–9. As noted above an "applicant for admission" is defined in § 1225(a)(1) as "[a]n alien present in the United States who has not been admitted . . . ," and "admitted" is defined in § 1101(a)(13)(A) as noncitizens who have not "lawful[ly entered] into the United States *after inspection and authorization by an immigration officer.*" 8 U.S.C. § 1225(a)(1); 8 U.S.C. § 1101(a)(13)(A) (emphasis added). So the definition of "applicants for admission" can be read as noncitizens who have not "lawful[ly entered] into the United States after inspection and authorization by an immigration officer." This definition requires applicants for admission to have undergone inspection and authorization by an immigration officer. That reading does not fit with Respondent's definition of "applicants for admission," which includes noncitizens who have been residing for a long time in the interior of the country without inspection or authorization by an immigration officer.

10

The titles of the provisions here suggest that Petitioner's interpretation of the statutory framework is correct. *See Godinez-Lopez v. Ladwig et al.*, No. 2:25-cv-02962, at *8 (W.D. Tenn. Oct. 31, 2025). "[T]he title of a statute in the heading of a section are tools available for the resolution of a doubt" about the statute's meaning. *Dubin v. United States*, 599 U.S. 110, 121 (2023). The title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and the title of § 1226 is "Apprehension and detention of aliens." 8 U.S.C. §§ 1225–26. Section 1225's title envisions *arriving* aliens placed in *expedited removal*, but Petitioner was detained about 1,000 miles from the border years after he had crossed it. (ECF No. 1 at PageID 11.) Nor was Petitioner eligible for expedited removal proceedings. (*Id.*) The title of § 1225 therefore seems inapplicable to noncitizens in Petitioner's shoes, but the title of § 1226 seems spot on. Petitioner is a noncitizen who was apprehended and detained.

A look at the subject matter of § 1225 further undercuts Respondent's interpretation of the statutory framework. Section 1225 describes the process of inspecting and removing immigrants who are actively crossing the border or entering at a port of entry. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."); 8 U.S.C. § 1225(b)(2)(A). It explicitly applies to "an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). It makes little sense to apply § 1225 to Petitioner who has resided in the United States for over two decades and is not actively entering the country.

Respondent also ignores several words and phrases within § 1225(b)(2)(A) in its interpretation of the provision. *See Godinez-Lopez v. Ladwig et al.* No. 2:25- CV-02962, at 8–9 (W.D. Tenn. Oct. 31, 2025). "If possible, every word and every provision is to be given effect." Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). Section 1225(b)(2)(A) states, "[I]n the case of an alien who is an applicant for admission, if the *examining immigration officer* determines that an alien *seeking* admission is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As Petitioner points out, he "was never seen by an 'examining immigration officer' and was not 'seeking' anything at the time of his apprehension. He did not receive a determination that he was 'not clearly and beyond a doubt entitled to be admitted.'" (ECF No. 1 at PageID 12.) The Court agrees with Petitioner that the language of § 1225(b)(2)(A) aligns with noncitizen arriving at the border and a candidate for expedited removal. (*Id.* at PageID 13.) By contrast, the language does not coherently apply to a noncitizen detained "far from the border and years after he has allegedly entered." (*Id.* at PageID 13.)

Respondent would have the Court interpret all noncitizens who did not enter the country lawfully to be "seeking admission," no matter how or when ICE arrested them or how long they lived in the United States. (*See* ECF No. 11 at PageID 51.) He ignores that the language of § 1225(b)(2)(A) suggests active conduct by the noncitizen by using the progressive verb tense— "seeking admission"—not a passive status. With that in mind, to be mandatorily detained, the noncitizen must be "seeking admission," not simply residing in the country after entering it unlawfully. The Court finds that "seeking" suggests action so, to fall under § 1225(b)(2)(A), the noncitizen must be *actively* seeking admission. The Court differs from Respondent by

12

recognizing the class of noncitizens that did not lawfully enter the United States—subject to removal proceedings as a result—but who are nonetheless not seeking admission. That the INA provides two examples of noncitizens who are not seeking admission does not preclude the existence of more classes of noncitizens that do not fall under § 1225. (*See id.* at PageID 52.)

### b. Interpretation of the Statutory Framework

The existence of § 1226(c) also undercuts the Respondent's position here because Respondent's interpretation of the INA makes § 1226(c) superfluous. *See Godinez-Lopez v. Ladwig et al.*, No. 2:25- cv-02962, at *9 (W.D. Tenn. Oct. 31, 2025). "In Section 1226(c), the INA describes people who would otherwise be eligible for bond under Section 1226(a), but are rendered ineligible for bond because of their criminal histories." (ECF No. 1 at PageID 13 (citing 8 U.S.C. § 1226(c)).) Subsections 1226(c)(1)(E)(i)–(ii) provides for mandatory detention of certain noncitizens. But it applies only to those noncitizens who both entered the country without inspection under 8 U.S.C. § 1182(a)(6)(A), (C), and (7) and are also "charged with, . . . arrested for, . . . convicted of . . ." certain crimes. 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). And thus, to read § 1225(b)(2)(A) to make every noncitizen that did not lawfully enter the country subject to mandatory detention (as Respondent argues) would strip 1226(c) of meaning. Further, Congress only recently added subsection 1226(c)(1)(E) to § 1226 with the Laken Riley Act. Pub. L. No. 119-1, 139 Stat. 3 (2025). Respondent's interpretation also asks this Court to presume Congress pointlessly amended the statute with a redundant provision when it most recently considered it. *See Lopez-Campos Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *8 (quoting *Maldonado v. Olsen*, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025)). The Court declines to do so.

13

The plain meaning of § 1226 better captures Petitioner's situation. It applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Petitioner was apprehended in a traffic stop in the interior of the country after residing here for over twenty years. Thus the Attorney General has the discretion under this section to "continue to detain [him]" or she "may release [him] on bond." (*Id.*) She may not, though, deny him the bond hearing to which he is entitled. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1).

Given the plain text of the INA and its recent amendment with the Laken Riley Act, the Court finds § 1226 governs the arrest and detention of a noncitizen without a criminal history who has been residing in the United States for over two decades. Petitioner is therefore subject to the discretionary bond process under § 1226 and entitled to a bond hearing.

### III. Due Process

The Fifth Amendment of the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." *Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). "In the context of civil immigration detention, the Sixth Circuit applies the balancing test from *Mathews v. Eldrige*, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen." *Godinez-Lopez v. Ladwig et al.*, No. 2:25-cv-02962, at *11 (W.D. Tenn. Oct. 31, 2025) (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)). Under the *Matthews* test, this Court considers (1) "the private interest that will be affected by the official action." (2) "the risk of an erroneous

deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mattews v. Eldridge*, 424 U.S. 319, 335 (1976).

Because § 1226(a) applies to Petitioner, he is entitled to the process owed to him under that provision.  Upon weighing the *Matthews* factors, Petitioner has a strong liberty interest, the absence of any bond hearing creates a high risk of erroneous deprivation of his liberty right, and given Petitioner's longstanding residence and family in the United States, the Government's interest in denying him a bond hearing is diminished.  The Court finds that the Government's interest in fewer bond hearings (the efficient processing on noncitizens for removal) does not outweigh Petitioner's interest or the risk of erroneous deprivation.  "The recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests." *Lopez-Campos*, 2025 WL 2496379, at *10.

Consequently, Petitioner's detention without a bond hearing violated his liberty interest. Petitioner is entitled to a bond hearing before an immigration judge.  The Court therefore **GRANTS** the Petition.

## IV.    Attorney's Fees and Costs

Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.  (ECF No. 1 at PageID 17.)  Section 2412(b) allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ."  28 U.S.C. § 2412(b).  Federal Rule of Civil Procedure 54 requires that claims for attorney's

fees and related expenses be made by motion. Fed. R. Civ. P. 54(d)(2)(A). Thus, Petitioner must file a motion that complies with Local Rule 54.1(b) to seek attorney's fees and costs. *See* Loc. R. 54.1(b).

## **CONCLUSION**

For the reasons above, the Petition is **GRANTED**. Respondent is **ORDERED** to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) and 8 C.F.R. § 1236.1(c)(8), (d)(1) within seven days of the entry of this Order and to release Petitioner pending the bond hearing. Respondent is further **ENJOINED** from pursuing Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A).

**SO ORDERED**, this 12th day of December, 2025.

                                        s/Thomas L. Parker
                                        THOMAS L. PARKER
                                        UNITED STATES DISTRICT JUDGE